UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 4:19CR00488 |
| | ) | |
| | ) | |
| LISA L. HURLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Defendant's Motion to Suppress Evidence and Request for Hearing</u>**

Defendant, Lisa Hurley, through counsel Joshua Lohn, moves that this Honorable Court enter an order suppressing any evidence obtained following her detention and arrests at or near 4649 Carter Avenue on May 8, 2019 in Saint Louis, Missouri, and 4824 Bessie Avenue on June 25, 2019 in Saint Louis, Missouri, including but not limited to, one HS Produkt XD-40 handgun, one Rohm RG12 handgun, one KSG model 12 gauge shotgun, and various cartridges and ammunition. Police seized these items in violation of Defendant's rights to be free from unreasonable searches and seizures and due process of law as guaranteed by the Fourth and Fifth Amendments to the United States Constitution. In support of his Motion, Defendant states the following:

**<u>Facts</u>**

1.      On May 8, 2019, Detective James Wilcox and Detective Nijuah Woodard, of the St. Louis Metropolitan Police Department,  traveled to the M&L corner store located at 4946 Carter Avenue for the purpose of arresting Ms. Hurley relative to a

wanted allegedly issued for her in association with a Murder 1st and Armed Criminal Action. There was no arrest warrant for Ms. Hurley at that time. Once inside the store, Detective Wilcox arrested Ms. Hurley. While in custody, the officers claim that Ms. Hurley stated she needed medicine from a red and white bookbag. Detective Woodard then located the red and white bookbag and saw in plain view two handguns in the bookbag from which Ms. Hurley had supposedly asked the officer to retrieve her medicine. The officers then photographed the area and the bookbag.

2.      On June 24, 2019, Detective James Wilcox responded to the 22nd Judicial Circuit Court's warrant office for the application of a warrant for Ms. Hurley, and an arrest warrant for Ms. Hurley was issued, per state court case 1922-CR01922, for two counts of Unlawful Possession of a Firearm.

3.      On June 25, 2019, Detective Wilcox, along with a number of other officers, arrived at Ms. Hurley's residence, located at 4824 Bessie Avenue, Saint Louis, Missouri, for the purpose of effecting the arrest warrant issued the previous day. After conferring with his team, Detective Wilcox approached and knocked on Ms. Hurley's front door, and moments later, Ms. Hurley answered the door. Detective Wilcox then advised Ms. Hurley of her arrest warrant and she was taken into custody without incident. After Detective Wilcox effected the arrest warrant on Ms. Hurley, a safety sweep of Ms. Hurley's residence was conducted. During the course of that safety sweep, Detective Wilcox found a Kel-Tec 12 Gauge shotgun in the rear room of Ms. Hurley's residence.

## **Relevant Legal Standards and Analysis**

4.      <u>The arrest of defendant based solely on a police-issued wanted lacked probable cause and requires further scrutiny.</u>

Police may "detain an individual for a brief period of time if they have a reasonable suspicion that criminal activity is afoot." *United States v. Walker*, 555 F.3d 716, 719 (8th Cir. 2009)(citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). While a "Terry" stop requires reasonable suspicion, it "may become an arrest, requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force." *United States v. Hopkins*, 824 F.3d 726 (8th Cir. 2016) citing *United States v. Newell*, 596 F.3d 876 (8th Cir. 2010). This probable cause standard applies to all arrests, while "a wanted allows [police] to get a to get a suspect in for booking and potential interrogation…detention for custodial interrogation—regardless of its label—intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." *Dunaway v. New York,* 442 U.S. 200, 216 (1979). In determining the admissibility of evidence obtained as the result of an arrest based on a wanted is dependent on the state's ability to prove the arresting officers acted in objectively reasonable reliance on the information in the wanted, and that the officer who issued the wanted had reasonable suspicion that the defendant had committed a crime. United States v. Hensley, 469 U.S. 221 (1995).

5.      Following that standard, Detectives Wilcox and Woodard violated Ms. Hurley's Fourth and Fourteenth Amendments when, without probable cause, they seized her and transported her to the police station for interrogation. Neither at that time, nor any

time after, has an arrest warrant been issued for Ms. Hurley in relation to a Murder 1st.

Neither at that time, nor any time after, has an arrest warrant been issued for Ms. Hurley

in relation to an Armed Criminal Action. In reviewing police use of wanteds in the St.

Louis area, the Department of Justice found:

> FPD and other law enforcement agencies in St. Louis County use a system of "wanteds" or "stop orders" as a substitute for seeking judicial approval for an arrest warrant. When officers believe a person has committed a crime but are not able to immediately locate that person, they can enter a "wanted" into the statewide law enforcement database, indicating to all other law enforcement agencies that the person should be arrested if located. While wanteds are supposed to be based on probable cause…they operate as an end-run around the judicial system. Instead of swearing out a warrant and seeking judicial authorization from a neutral and detached magistrate, officers make the probable cause determination themselves and circumvent the courts. Officers use wanteds for serious state-level crimes and minor code violations alike, including traffic offenses…At time FPD officers use wanteds not merely in spite of a lack of probable cause, but because they lack probable cause.

Department of Justice Investigation of the Ferguson Police Department, Pg. 22, 23.[1]

While the DOJ's investigation did not specifically include the Saint Louis Metropolitan

Police Department, the findings of their report demonstrate the problematic nature of

arrests based solely on a police-issued wanted and the necessity to further review whether

probable cause was actually present at the time of such an arrest.

    6.    <u>The search of defendant's residence after she was in custody outside of her home exceeded the scope of the arrest warrant.</u>

    The fourth amendment requires that a warrant describe with particularity the place

to be searched and the persons or things to be seized. This mandate aims to circumscribe

---

[1] Available at https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/04/ferguson_police_department_report.pdf

the scope of a search and seizure, and to safeguard the individual's privacy interest against a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971). While officers may conduct some warrantless searches following a valid arrest, the scope of such searches is limited to the arrestee's person and the area within the suspect's immediate control. *United States v. Robinson,* 414 U.S. 218, 235 (1973); *Chimel v. California,* 395 U.S. 752, 763 (1969).

7.     In this case, the officer's conduct clearly exceeded the scope of the warrant for Ms. Hurley's arrest. According to the officer's own report, "I knocked on the front door of the residence and moments later Lisa H. answered the door. I advised her of arrest warrant, and she was taken into custody without incident." At that point, the arrest warrant had been fully executed making anything beyond a search of Ms. Hurley's person and/or her immediate area of control beyond the scope of the warrant. However, the officers then conduct a "safety sweep…for any further subjects", regardless of the fact that Ms. Hurley, the only person mentioned in the arrest warrant, was already in custody outside the home. As a result of the "safety sweep", Detective Wilcox found a Kel-Tec 12 Gauge shotgun in the "rear room of the residence." At that time, Ms. Hurley was in custody, outside the home and in front of the residence.

## Conclusion

9.     When the officers arrested Ms. Hurley on May 8, 2019, they did so based solely on an alleged wanted and without probable cause, making that arrest unlawful and rendering all evidence obtained as a result of that arrest inadmissible. When the officers searched Ms. Hurley's residence, after she had already been taken into custody and was

outside of the residence, they clearly exceeded the scope of the warrant, making it an unlawful search. Which again, rendered all evidence obtained as a result of that search inadmissible.

WHEREFORE, Defendant respectfully requests that this Honorable Court grant her Motion to Suppress Evidence, schedule a hearing on the matter, and order any additional relief that It deems just.

Respectfully Submitted,

/s/ Joshua D. Lohn
Joshua D. Lohn, #69578MO
Attorney for Defendant
100 S. 4th St., Ste 1200
St. Louis, MO 63102
Ph: (314) 710-1613

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Thomas Meehan, Special Assistant United States Attorney.

/s/ Joshua D. Lohn
JOSHUA D. LOHN

1922-CR01922



## PROBABLE CAUSE STATEMENT

DATE: June 24, 2019

I, Det. Wilcox, knowing that false statements on this form are punishable by law, state that the facts contained herein are true.

1.  I have probable cause to believe that Lisa Ladett Hurley, a Black/African American FEMALE DOB: 6/20/66 Age: 53, committed one or more criminal offense(s).
Count 1     Unlawful Possession Of A Firearm (Class D Felony)  RSMO 571.070
**ON** 5/8/2019 Time:   **PLACE:** 4649 Carter Ave  (SCC 571.070-001Y201752)
Count 2     Unlawful Possession Of A Firearm (Class D Felony)  RSMO 571.070
**ON** 5/8/2019 Time:   **PLACE:** 4649 Carter Ave  (SCC 571.070-001Y201752)

2.  The facts supporting this belief are as follows: On or about May 8, 2019, while acting to arrest Defendant relative to a "Murder 1st" and an "Armed Criminal Action" Wanted, Det. Wilcox saw Defendant holding a red/white book bag that she carried into the store at 4824 Bessie Ave.  Inside the store, Wilcox took Defendant into custody.  Defendant said she needed medicine from the red/white book bag.  Det. Woodard located the book bag and saw in plain view, in the open outermost pocket, two handguns.  After Miranda, Defendant said that "this is a dangerous neighborhood, and I need something to protect myself . . . ."  Wilcox had prior knowledge that Defendant was a convicted felon.  During a later interview, after Miranda, Defendant admitted that she borrowed the firearms from her stepson to use for protection.

Det. Wilcox

_DET. _____ , DSN 8245_

PRINT NAME                                    SIGNATURE

07/31/2015 - 22nd Judicial Circuit Court, MO - 1422-CR02523-01
*   Count 1: Dist/Del/Manf/Produce Or Attempt To Or Possess W/Intent To Dist/Del/Manf/Produce A Controlled Substance - 10 years SES 5 years
*   Count 2: Unlawful Use Of Drug Paraphernalia - 1 year SES 2 years
*   Count 3: Possession Of A Defaced Firearm  - 6 months SES 2 years
    *   Capias 05/22/2015

02/11/2014 - 22nd Judicial Circuit Court, MO - 1322-CR02692-01
*   Count 1: Possession Of Controlled Substance Except 35 Grams Or Less Of Marijuana - SIS 3 years (revoked 07/31/2015)
*   Count 2: Unlawful Use Of Drug Paraphernalia - SIS 2 years (revoked 07/31/2015)

03/30/2005 - 22nd Judicial Circuit Court, MO - 22041-00324-01
*   Count 1: Possession Of Controlled Substance Except 35 Grams Or Less Of Marijuana - Nolle Pros
*   Count 2: Possession Of Controlled Substance Except 35 Grams Or Less Of Marijuana - Nolle Pros
*   Count 3: Possession Of Controlled Substance Except 35 Grams Or Less Of Marijuana - SIS 5 years (successfully completed 10/06/2008)
*   Count 4: Possession Of Controlled Substance Except 35 Grams Or Less Of Marijuana - SIS 5 years (successfully completed 10/06/2008)







**ST. LOUIS METROPOLITAN POLICE INCIDENT REPORT**
CN 19-029907

**Printed: 08/21/2019 18:33:03  DSN: TMEH**

Page 7 of 8

Primary Key - 2212507

| NARRATIVE |
| --- |

Detective Michael O`Callaghan, DSN 11333 and I (Detective James Wilcox, DSN 8245) are assigned to the St. Louis Metropolitan Police Department`s Intelligence Unit-F.A.S.T. (Fugitive Apprehension Strike Team). We conduct our duties while operating covert police vehicles and while wearing plain clothes and police gear, which is clearly marked with the word "POLICE" on the front and back in large lettering.

On 06/24/19, I responded to the 22nd Judicial Circuit Court`s warrant office for warrant application of identified subject Lisa H., per complaint #19-020918. An arrest warrant was granted and issued for Lisa H., for Unlawful Possession of a Firearm (2 counts) per court case #1922-CR-01922.

On 06/25/19, I began a fugitive investigation into locating and apprehending Lisa H. for her aforementioned warrants. A computer inquiry revealed the warrants were active and her prior history still indicated she was a convicted felon.

I responded to 4824 Bessie; to conduct an arrest attempt on Lisa H. The following law enforcement personnel responded to assist in the investigation of Lisa H., and were briefed and devised a plan to arrest her for his outstanding warrants:

Sergeant Ann Long, DSN 7210
Detective Michael Minor, DSN 6757
Detective Nijuah Woodard, DSN 7993
Detective Monroe Jenkins, DSN 8935
Detective Nicholas Shelton, DSN 11025
Detective Lawerence Mathews, DSN 7711
Detective Michael O`Callaghan, DSN 11333

Once all aforementioned Detectives were in place, we approached the residence in attempt to take Lisa H. into custody. I knocked on the front door of the residence and moments later Lisa H. answered the door. I advised her of her arrest warrant, and she was taken into custody without incident. A safety sweep was conducted for any further subjects, but it was to no avail.

While conducting a safety sweep, I observed suspected illegal narcotics and drug paraphernalia located in the center bedroom of the residence in plain view. Also, during the safety sweep I observed a Kel-Tec 12-gauge shotgun in plain view in the rear room of the residence. I seized the aforementioned narcotics and firearm as evidence.

Lisa H. requested I retrieve some warmer clothes from the inside of the residence for her booking process.

It should be noted while taking Lisa H. into custody, a strong odor of Marijuana was emitting from inside the residence.

It should be noted that I have prior knowledge that Lisa H. is a convicted felon


EXHIBIT
D



**ST. LOUIS METROPOLITAN POLICE**
**INCIDENT REPORT**
CN 19-029907

**Printed: 08/21/2019 18:33:03  DSN: TMEH**

Primary Key - 2212507

| NARRATIVE |
| --- |

and should be not be in possession of any firearms. I retrieved her some
clothes and responded back to Lisa H.

I further advised Lisa H. she would be additionally charged with "Unlawful
Possession of a Firearm" "Unlawful Use of a Weapon-Sub Section 11" and
"Possession of a Controlled Substance". I advised Lisa H. of her Miranda Rights
per MPD Form Gen-19.  Lisa H. advised me she understood her rights by stating,
"Yes. I understand I am not supposed to have a gun on the streets, but I thought
it was ok to have one in my house."

While utilizing latex gloves, I rendered the shotgun safe by ejecting (1) live
12-gauge cartridge and removing an additional (14) live cartridges from the
storage tubes. A further inspection of the aforementioned narcotics revealed a
tube with suspected "THC", a quantity of suspected Marijuana, and numerous bars
of suspected Xanax.

I photographed the scene relative to this investigation. I will provide
photographs to the Circuit Attorney`s office upon warrant application.

The scene was secured by me utilizing a key provided by Lisa H.

Det. O`Callaghan and I conveyed Lisa H. to the St. Louis City Justice Center
without incident where she was booked accordingly.

I later marked, packaged the aforementioned suspected narcotics, firearm, and
related equipment which was relinquished to Det. O`Callaghan. Det. O`Callaghan
later conveyed the property to the Department Laboratory for analysis.

Sgt Long supervised the incident.